## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Bell and Arthur Condominium Association, Inc.,** | Bankruptcy No. 22-00410 |
| Debtor. | Honorable Carol A. Doyle |

## PLAN OF REORGANIZATION, DATED APRIL 13, 2022 FILED BY BELL AND ARTHUR CONDOMINIUM ASSOCIATION, INC.

Now comes the Bell and Arthur Condominium Association, Inc. (the "Debtor") propounding its Plan of Reorganization (the "Plan") under Chapter 11 of the Title 11 of the United States Code ("Bankruptcy Code"), proposing to pay its creditors from future income generated by assessments and the collection of outstanding receivables. The Debtor is a subchapter V debtor, and this Plan is governed by subchapter V of the Bankruptcy Code, 11 U.S.C. 1181 *et seq.*

Generally, the Plan provides to divide payees into three classes – a secured creditor not impaired (only one creditor is found in this class), a secured creditor that is impaired (again, only one creditor is found in this class), and general unsecured creditors.

The Debtor provides administrative priority for its Debtor's bankruptcy counsel. Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes. No priority tax clams are anticipated. The Debtor's counsel's administrative fee and expense claims, as well as those of the subchapter V Trustee, are to be paid in full over the course of 24 months.

The plan proposes to pay two secured creditors, Barrington Bank & Trust Company, N.A., a Wintrust Community Bank ("Barrington Bank") and the City of Chicago (for a prebankruptcy arrearage in the Debtor's utility service payments) in full, at fixed monthly payments. Barrington Bank will be unimpaired, paid in full at the terms provided by its note and security agreement with the Debtor. The City of Chicago will be paid in full with reduced monthly payments such as the Debtor can afford, as detailed below.

The class of general unsecured creditors encompasses all creditors of the Debtor not in an earlier class. These include, most significantly, Cambridge Mutual Fire Insurance Company ("Cambridge") and Phoenix Rising Management Group, as well as small vendors engaged by Phoenix Rising Management Group when it was acting as receiver for the Debtor. General unsecured creditors' claims will be

{00219808}

compromised and will only receive payment commencing with the 25th month of the plan. The Debtor estimates that general unsecured creditors will receive 6.81% of the total value of their claims.

There are no claims of insiders, but if any such claims are levied, they will be subordinated and will not receive a distribution unless all other classes of creditors receive payment in full. Equity security holders will not receive a distribution.

All creditors should review this Plan in its entirety. **Your rights may be affected. You should read these papers carefully and discuss with your attorney. A Ballot Form is attached hereto as Exhibit A.**

**Exhibits to this Plan include:**

A. Ballot
B. Projections
C. Monthly Operating Reports

## ARTICLE I: *Classification of Claims and Interests*

1.01   Class 1   Secured Claim of Barrington Bank.

1.02   Class 2   Secured Claim of City of Chicago

1.03   Class 3   General Unsecured Claims: Allowed claims of creditors which are unsecured.

## ARTICLE II: *Treatment of Administrative Claims and Trustee Compensation*

2.01   <u>Unclassified Claims</u>. Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes.

2.02   <u>Administrative Expense Claims</u>.

a. *Professional Fees.* Each holder of an administrative expense claim allowed under §503 of the Bankruptcy Code will be paid in full at a rate of $100.00 per month, commencing with the Effective Date of this Plan (as defined in Section 7.01), in cash. Before the 24th month of the plan concludes, the administrative expense claim will be paid in full from revenues generated by collection of outstanding receivables, or upon such other terms as maybe agreed upon by the holder of the claim and the Debtor.

b. *United States Trustee Fees.* This case is a subchapter V Chapter 11 case. As such, no U.S. Trustee fees are required to be paid under 28

U.S.C. §1930(a)(6).

    c.  *Subchapter V Trustee Fees.* All fees required to be paid to the appointed subchapter V Trustee pursuant to Court order shall be paid in full within 30 days of the Court's order approving such fees.

## ARTICLE III: *Treatment of Claims and Interests Under the Plan*

Claims and interests shall be treated as follows under this Plan:

### 3.01    Class 1 – Secured claim of Barrington Bank

As of the date of this Plan, Barrington Bank has not yet filed a proof of claim in this case. Barrington Bank made a loan to the Debtor at, broadly-speaking, the following terms (a) $61,750.00 was loaned to the Debtor on or about August 3, 2021, with Barrington Bank to be repaid over the course of sixty months, commencing September 3, 2021; (b) monthly payments to Barrington Bank would be in the amount of $1,168.94, with an interest rate of 5.25% per annum; (c) to secure performance, Barrington Bank was granted a lien on future assessments of the Debtor.

The Debtor proposes to continue paying Barrington Bank pursuant to the prebankruptcy note and security agreement, and this plan does not intend to alter its treatment. Barrington Bank will retain its lien on future assessments until its secured claim is paid in full. Barrington Bank's remedies in the Event of Default (as defined in the Debtor's Loan and Security Agreement with Barrington Bank) would remain unchanged, as would the eventualities that occasion default, provided that notice of any Event of Default must also be provided to the Debtor's bankruptcy counsel. Otherwise, Barrington Bank would need no leave of the Bankruptcy Court to exercise its rights in the event of default.

### 3.02    Class 2 – Secured Claim of City of Chicago

On January 31, 2022, the City of Chicago filed its proof of claim in the amount of $7,588.40, with 0% interest. It indicated that it held a secured claim by virtue of a statutory lien, securing debt incurred relating to "metered residential water," "sewer residential metered," and penalties and taxes related thereto. The Debtor will pay the claim of the City of Chicago in full by way of monthly payments of $126.48 per month.

### 3.03    Class 3 – General Unsecured Claims

General unsecured claims will be paid at the greatest rate that the Debtor can afford. The Debtor scheduled general unsecured claims in the aggregate amount of $84,388.16. This omitted – valuing as "unknown" – one claim of Cambridge

Mutual Fire Insurance Co, earlier identified in this Plan as "Cambridge."

Cambridge is the plaintiff in prebankruptcy litigation against the Debtor, in case 1:18-cv-05951 in the United States District Court for the Northern District of Illinois. Its amended complaint seeks declaratory judgment that it had no duty to defend the Debtor, and the members of its Board, against meretricious litigation brought the Debtor and its board by the owners of one of the Debtor's fifteen units, and seeking a declaratory judgment that it is entitled to reimbursement of its defense costs. On July 13, 2020, Cambridge filed a motion for summary judgment in this litigation, which was still pending as of the commencement of the Case, and which remains so pending; see dkt. 127 in that matter.

As of the propagation of this plan, Debtor's counsel has approached Cambridge's counsel and requested it file a proof of claim in the Debtor's bankruptcy case. If it fails to do so, Debtor will endeavor to estimate its claim, pursuant to 11 U.S.C. 502(c), at $180,000.00.

As such, for an estimated $264,388.13 in general unsecured claims, the Debtor will pay $500 per month commencing in the 25th month of the plan, pro rata, paying a total of $18,000.00 and thus 6.81% of their claims.

## ARTICLE IV: *History of the Debtor, Description of Assets (Liquidation Analysis) and Projected Income*

### 4.01    History of the Debtor

A small condominium association, acting for the benefit of the owners of fifteen condominium units, the Debtor was forced to seek chapter 11 relief to keep from buckling under the weight of claims arising out of years of litigation.

Alan and Nawwar Alhomsi, owners of a unit in the building that the Debtor serves, commenced frivolous and abusive litigation against the Debtor, under cause number 17-L-03486 at the Circuit Court of Cook County. The Debtor expected its insurance carriers would cover the cost of the litigation. While those insurance carriers did advance the costs of defense under a reservation of rights (and the Alhomsis' claims were, in due course, dismissed for want of prosecution), the insurance carriers ultimately determined that the Alhomsi litigation had been outside the scope of their policies. The insurance carriers, Cambridge and State Auto, sought to recover those costs.

Both brought suit in the United States District Court for the Northern District of Illinois. Cambridge's case (1:18-cv-05951) continues to remain open as of the commencement of this bankruptcy, as discussed in section 3.03 above. State Auto's (1:18-cv-05927) was resolved in State Auto's favor, and against the Debtor and its

board, with entry of judgment permitting it to seek reimbursement of $180,135.28 (see dkt. 151 in that cause).

The Debtor, and its board, were able to settle with State Auto, once citation proceedings commenced, for $60,000.00. To obtain those $60,000.00, the Debtor entered into its loan and security agreement with Barrington Bank. By this chapter 11 plan, the Debtor expects to seek long-term resolution of its issues.

4.03   Assets of the Debtor/Liquidation Analysis

The Debtor has minimal assets. Though their face values are higher, the Debtor expects to recover prebankruptcy arrearages in assessments, that are owed to it, by three owners, in the approximate amount of $20,000.00. The Debtor has levied a special assessment against Nawaar Alhomsi (who brought the Circuit Court litigation that ultimately caused the Debtor's need for bankruptcy relief) in the amount of $65,911.25, but is unable to make representations concerning the collectability of the same.

The current value of the entire building is estimated between $1.7 and $2 million dollars, but this would include the interests of the Debtor's owners in their units, liquidating the entire building subject to their interests would be costly and likely generate no value for any party. As of the Petition Date, the Debtor had $4,987.13 in its bank account, and small equipment (e.g., a salt spreader) for usage in building maintenance.

The Debtor owns one small unit itself, in the basement of the building. The Debtor endeavors not to need to sell this unit, because, over the life of the plan, and thereafter, the money it makes from renting the unit is preferable to (and, exceeds) the one-time infusion of cash it would get from selling the unit. In all events, the unit would need renovations before it could be sold.

To confirm the Plan, the Court must find that all creditors and equity interest holders that do not accept the Plan will receive at least as much under the Plan as such claim and equity interestholders would receive in a Chapter 7 liquidation. The Debtor submits that this is the case.

The value of the Debtor is generated by the continued operations of the Debtor. As a result, creditors will derive the most benefit from allowing the Debtor to restructure and generate income to satisfy the payments under the Plan.

4.04   Projected Income

The Debtor must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business.

{00219808}

Establishment of a reserve is essential for the continued maintenance of the Debtor's unit owners' interest in the property, and thus, for the Debtor.

The Debtor projects income to be derived from three sources – ongoing assessments, collection of unpaid receivables due and owing on the petition date (in the interest of security, the Debtor anticipates the value of these claims, with a face value in excess of $100,000.00, at $20,000.00), and the leasing-out of the basement unit.

A copy of the Debtor's 5-year projections is attached hereto as <u>Exhibit B</u>. The Debtor's financial projections show that the Debtor will have cumulative projected disposable income (as defined by Section 1191(d) of the Bankruptcy Code for the period described in Section 1191(c)(2) sufficient to pay the required payments under the Plan. The Plan is a 5-year plan.  The final Plan payment will be in approximately 2027. The 5-year projections allow for establishment of a modest reserve.

4.05    <u>Operations During Chapter 11 Proceeding</u>

Prebankruptcy, seeking to solidify its financial posture, the Debtor increased assessments on all unit owners by 18%. The Debtor estimates increasing assessments on all unit owners by 4% per year for each of the following five years.

However, certain variables have proven difficult to account-for in the budget. Year-over-year, the cost of heating fuel is approximately triple what it was last year (with no significant increase in usage) and current inflation has made predictions tentative, at best.

As of the propagation of the plan, the Debtor does not believe any nontrivial deferred maintenance may disrupt its operations, or require any further special assessments to be levied against its owners. No issues with HVAC, plumbing, water heater, or other issues are reasonably anticipated to occur.

Attached as <u>Exhibit C</u> are the Debtor's operating reports filed in the Chapter 11 proceeding as of this date.

Subject to the above, the Debtor has estimated future income based upon past operations.

## ARTICLE V: *Allowance and Disallowance of Claims and Estimation of Claims*

5.01    <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed ordisallowed by a final non-appealable order and as to which either (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest

{00219808}

has filed an objection; or (b) no proof of claim has been filed and the Debtor has scheduled the claim as disputed, contingent or unliquidated. The Debtor scheduled no disputed claims.

5.02    <u>Estimation of Claims</u>. The Debtor may, at any time, request that the Bankruptcy Court estimate any the claim of Cambridge Mutual Fire Insurance Co. pursuant to §502(c) of the Bankruptcy Code regardless of whether it ever files a proof of claim. In the event that the Bankruptcy Court estimates a disputed claim, the estimated amount may constitute either the amount of the allowed claim or a maximum limitation of the claim.

5.03    <u>Prepayment of Claims</u>. The Reorganized Debtor reserves the right to offer prepayment of claims to creditors before the expiration of the Plan without penalty or premium. Acceptance of prepayment by creditors shall be purely voluntary. The prepayment shall be conditioned upon no affect or impairment of the Reorganized Debtor's ability to satisfy its obligations under the Plan.

5.04    <u>Lapsed and Unclaimed Distributions</u>.

(a)    Any distribution that has not been cleared within ninety (90) days of the date of thedistribution will lapse.  Lapsed distributions will revert to the Debtor.

(b)    If any distribution is returned as undeliverable, no further distributions to such creditor will be made unless the Debtor is notified in writing of the creditor's current address. Upon receipt of the notification, the Debtor will remit all missed distributions to the creditor without interest. All claims for undeliverable distributions must be made on or before the first anniversary of the Effective Date of the Plan. If any claims are not made within that time, all unclaimed distributions will revert to the Debtor. Nothing in the Plan will require the Debtor to attempt to locate any holder of an allowed claim.

5.05    <u>Litigation Claims.</u> The Debtor does not anticipate filing any litigation claims.

## ARTICLE VI: *Provisions for Executory Contracts*

6.01 <u>Rejected Executory Contracts and Unexpired Leases</u>. The Debtor is party to several executory contracts for services relating to its work. It engages a janitor on a month-to-month basis. It is party to an insurance agreement with Country Mutual Insurance Company for $477.27 per month. It engages Flood Brothers Disposal on a month-to-month basis for trash pickup.

The Debtor engaged GPG and Associates for accounting services, and Kovitz Shifrin Nesbit for collections work. The Debtor seeks to assume its agreements with

all parties. The Debtor's continued retention of GPG and Associates, and Kovitz Shifrin Nesbit have been authorized by the Bankruptcy Court.

## ARTICLE VII: *General Provisions*

7.01    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  These definitions are supplemented by the following:

(a)    The Effective Date ("<u>Effective Date</u>") of the Plan will be the 30th day after the Order confirming the Plan is a final order.

(b)    The "Reorganized Debtor" shall refer to the Debtor as an entity created upon the entry of an order confirming the Plan.

7.02    <u>Conditions to Effective Date</u>. The following conditions precedent may affect the occurrence of the Effective Date: (1) failure to obtain confirmation; (2) modification of the Plan, which requires approval of the court; (3) the Order of Confirmation is vacated, amended, modified or stayed; or (4) the Order of Confirmation is the subject of any appeal, reconsideration or other review.

7.03    <u>Contested Plan Confirmation</u>. If the Debtor does not receive sufficient votes to confirm the Plan, pursuant to Section 1191(b), the Debtor shall seek to confirm the Plan as it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and have not accepted the Plan. In the event of a contested confirmation, the Debtor shall remain as the Disbursing Agent for all Plan payments.

7.04    <u>Remedies Upon Default</u>. In the event that the Debtor fails to make its Plan payments when due, and does not cure any such default within 30 days of the occurrence of such default, creditors may seek relief from the Plan injunction to enforce the terms of the Plan or, if the case has been closed, may enforce the terms of the Plan without further relief from the Bankruptcy Court.

7.05    <u>Severability</u>. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.06    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of the entity.

7.07    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

{00219808}

7.08    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.9    <u>Disbursing Agent</u>. The Debtor will be the disbursing agent for the Debtor forthe purpose of distributions and payments to be made pursuant to the Plan.

7.10    <u>Notice</u>: Any Notice of Default shall be sent to the Debtor's counsel by e-mail to jstorer@wfactorlaw.com and wfactor@wfactorlaw.com, to the Debtor at c/o Michael Mento, 8820 Skokie Blvd., No. 115, Skokie, IL 60077, and shall be effective when sent. Debtor may notify creditors, in writing, of any change of address for either the Debtor or counsel.

## ARTICLE VIII: *Discharge, Return of Property and Vesting of Assets*

8.01    <u>Discharge</u>. On the Effective Date, the Debtor will be discharged from any debt thatarose before confirmation of the Plan to the extent specified in §1141(d)(1)(A) of the BankruptcyCode. However, the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or of a kind specified in §1141(d)(6)(B). After the Effective Date, your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence. Notwithstanding the foregoing, discharge of Barrington Bank's debt is as of the Debtor's completion of payments to Barrington Bank.

8.02    <u>Vesting of Assets</u>. On the Effective Date of the Plan, Debtor's right, title and interest in and to its assets shall vest with the Reorganized Debtor.

## ARTICLE IX: *Retention of Jurisdiction*

The Bankruptcy Court shall retain jurisdiction over this Chapter 11 Case for the following purposes:

9.01 Resolution of any and all objections to claims and requests to estimate claims.

9.02 Determination of all questions and disputes regarding all causes of action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Effective Date between (a) the Reorganized Debtor and any other party or (b) otherwise under the Plan, theConfirmation Order or any other order issued by the Bankruptcy Court in connection with this Chapter 11 Case.

9.03 The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

9.04  Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

9.05 Allowance of all claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Reorganized Debtor or its estate pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

9.06 Entry of a Final Order confirming substantial consummation of the Plan and closing the Chapter 11 Case.

Dated: April 13, 2022

**Bell and Arthur Condominium Association, Inc.,**
By: /s/ Justin R. Storer

One of Its Attorneys
William J. Factor (6205675)
Justin R. Storer (6293889)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (312)373.7226
Fax:    (847) 574-8233
Email: jstorer@wfactorlaw.com

{00219808}